# EXHIBIT K



DEFENDANT'S
EXHIBIT

/

## SPONSORSHIP AGREEMENT

*For the period: October 2003- December 2006*

*DATED: October 20ᵗʰ, 2003*

### BETWEEN:

*Team Gordon, Inc.*

*And*

***Camp & Associates, Inc.***
*as agent for*
***Fruit of the Loom, Inc.***

*THIS AGREEMENT* is made this___ day of October, 2003, by and between *Team Gordon , Inc.* ("Owner"), a corporation with its principal place of business in Mooresville, North Carolina and *Camp & Associates, Inc.*, as agent for *Fruit of the Loom, Inc., a New York corporation* (collectively "Sponsor"), a corporation with its principal place of business in Concord, North Carolina.

WHEREAS, Sponsor and Owner desire Sponsor to sponsor the Car and the Team (as hereinafter defined) for the 2004 NASCAR Busch Series racing season and beyond, all on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and conditions hereinafter set forth, the parties hereby agree as follows:

1. **Definitions**

As used herein, the following words shall have the meanings ascribed to them below. Singular terms will have their normal plural meanings when used in the plural and vice versa.

(a)     "Car" or "Race car", shall mean the Driver's Busch Series entry racing vehicles bearing the number "31" or if such number is unavailable to Owner by reason of a prior contractual commitment, an available number chosen by Owner. References to the "Car" or "Cars" herein shall mean the racing cars referred to in Subsection 2(A)(1) hereof, and the particular Car that participates in any Race and the qualifying time trials therefor (or only the qualifying time trials therefor if it fails to qualify) or to the aggregate of the Cars that participate in all Races and their respective qualifying time trials (or only the qualifying time trials in the case of any Races for which the Car does not qualify), as the context admits.

(b)     "Contract Period" shall have the mean the term of this Agreement outlined in Section 3 of this Agreement and any and all extensions provided for and elected outlined in Section 5 herein.

(c)     "Driver" shall mean the person designated to operate the Car in all Races, all qualifying time trials, and all practice runs and testing sessions, who, except as otherwise herein specified, shall be Robby Gordon.

(d)     "Graphics" shall have the meaning attributed to it in Subsection 2(B)(3) hereof.

(e)     "Sponsor Identifications" shall mean trademarks, servicemarks and/or tradedress of Sponsor and/or their affiliates which may from time to time be depicted on any Graphics.

(f)     The "Races" shall mean the NASCAR Busch Series races during the 2004, 2005 and 2006 NASCAR Busch Series seasons as set forth generally on the document attached hereto as *Exhibit A.*

TGM 00040

(g) "Race Event" or "Race" shall mean a NASCAR sanctioned Race, the qualifying time trials therefor and all practice runs and other official activities associated therewith.

(h) "Substitute Driver" shall have the meaning attributed to it in Subsection 2(C)(2) hereof.

(i) The "Team" shall mean the racing team associated with the Car which includes, but is not limited to, all team members, the Driver, the Substitute Driver, and all mechanics and members of the pit crew that services the Car at each particular Race and at any practice runs, qualifying time trials or test sessions.

(j) The "Transporter" shall mean the race car transporter required to transport a Car and all support equipment therefor.

(k) "Associate Sponsor" shall mean an entity other than Sponsor, and the attendant Graphics identifying any product or service of which appear on a Car in accordance with Subsection 5(C) hereof.

(l) "Team Members" shall mean all employees and managers of Owner, including but not limited to crew chief, mechanics, pit crew members, fabricators, shock specialists, front office personnel, etc.

## 2. Owner's Duties and Obligations

### A. The Races and the Cars

(1) Owner shall at all times during the Contract Period at its sole expense maintain racing cars satisfying the definition of "Cars, attempt to qualify such Cars at each Race Event, and actually participate at each Race Event for which the Car qualifies, as well as provide for, at its sole expense, appropriate storage, maintenance and repair of the Cars. Owner hereby represents, warrants and covenants that each of said Cars and all related equipment and supplies will, at all times during the Contract Period, be in compliance in all material respects with all applicable laws, rules and regulations, and shall be maintained and operated in all material respects in conformance with the standards of the NASCAR Busch Series races, and that the pit crew and such equipment and supplies will be of at least equivalent quality and quantity to the pit crew equipment of other high caliber teams.

(2) Owner shall use its best efforts to qualify and race the Car in each of the Races. Owner recognizes that Sponsor is interested in the publicity and advertising exposure benefits of competition. Accordingly, Owner shall endeavor to keep the Car in active competition during each Race as long as possible, so long as such activity is not deemed dangerous or unsafe by Owner, Team or NASCAR.

(3) Owner shall provide a sufficient number of qualified mechanics and other personnel to maintain each of the Cars in good and attractive order, repair and condition at all times. Owner

TGM 00041

shall select and train personnel such that the Team is capable of competing effectively with the highest caliber teams in the NASCAR Busch Series races.

## B. Identification of Car and Team

(1)     Owner shall at all times during the Contract Period hereof cause the Car and, where reasonably practicable, the Sponsor or the Sponsor Identifications and Trademarks, to be referred to in all advertising, promotion and other public references, including, without limitation, by the Driver and any and all members of the Team in all interviews and other public statements by the Sponsor's name or as otherwise provided on the document attached hereto as *Exhibit B* incorporated herein by reference as if set out in full. Additionally when possible, Owner shall use its best efforts to assure that the Team and Driver will refer to the Car as the "Fruit of the Loom No. 31 Chevrolet" and will mention sponsor's products, services and any other reasonable messages as directed by Sponsor in any media interviews or activity to the best of his ability.

(2)     Owner shall also assure that proper Sponsor Identifications and Trademarks, as provided on the document attached hereto as *Exhibit B* and in accordance with the Fruit of the Loom Media Kit, appear on all collateral marketing and press materials distributed or maintained by Owner, Team and/or Team Agency, including but not limited to press kits, stationary, website, etc. The owner acknowledges that Sponsor may periodically update its rules and guidelines regarding Sponsor Identifications and Trademarks, upon reasonable written notice to Owner. All use of the Sponsor Identifications by Owner shall be approved or disapproved by Sponsor, in writing, in Sponsor's sole discretion.

(3)     Subject to the provisions of Paragraph 2(B)(2), Owner shall cause decals and/or printed graphics (collectively, "Graphics") identifying Sponsor Identifications or any other Sponsor approved entity (i.e. Sponsor or an entity or logo), to be affixed to the areas of the Car identified in *Exhibit C* incorporated herein by reference, in such sizes, colors and styles as Sponsor shall reasonably specify and in such a manner as Sponsor shall reasonably specify. Such size, color scheme and style may be changed by Sponsor throughout the race season, as provided in Subsection 2(B)(4).

(4)     Sponsor may from time to time change the Sponsor Identifications, color scheme and/or style of the Race Car and/or Graphics attached hereto, provided that Sponsor gives at least thirty (30) days prior written notice of the change to Team, and Sponsor shall be responsible for all reasonable, documented costs and expenses incurred by Team for replacing/repainting the Race Car. Sponsor may from time to time change the Sponsor Identifications, color scheme and /or style that are to appear elsewhere as permitted hereby, i.e. pit support equipment, uniforms, etc., provided that Sponsor gives at least thirty (30) days prior written notice of the change to Team together with a description of the particular medium that is to contain the change, and Sponsor shall be responsible for all reasonable, documented costs and expenses incurred by Team for such change. Sponsor acknowledges that Sponsor Identifications already in use as permitted hereby at the time of such change (for example, on die cast copies of the Race Car, in advertising or promotional materials, or on uniforms of the Race Team) may not be capable of revision until the next production of the same.  Notwithstanding any change to the Sponsor Identifications authorized by Sponsor, such change shall not affect the license granted hereunder with respect to the Sponsor Identifications and trademarks of Sponsor, as revised, and shall be deemed to be

included in the definition of Sponsor Identifications for purposes of this Agreement.

(5)    Owner shall assure that no Graphics or Sponsor Identifications of any third party shall be affixed to any of the areas of any car identified in subsection 2(B)(3), without the express written consent of Sponsor. In no event will any Graphics or Sponsor Identifications of any competitors of Sponsor appear on or be associated with the Car or with promotional items marketed by or on behalf of Owner or Driver, in connection with the Car or with the Busch Series or a Race Event.

(6)    The parties acknowledge that contingency awards may be earned by Owner in the event that Team has displayed a logo of a contingency award sponsor on the front quarter panel of the Car. In the event that Sponsor desires that contingency logo not to be displayed on the Car, then Sponsor agrees to match any award to the Owner that the Owner would have earned in the event that the identification was displayed. Sponsor understands and agrees that there are certain decals that must be displayed on the Car by the sanctioning body and Sponsor agrees to allow Owner to display these decals as required by NASCAR.

(7)    At the beginning of each season during the contract year, Owner shall provide driver uniforms bearing Sponsor Identifications in a size, color, style and manner as Sponsor shall reasonably specify, based on acceptable industry norms and limited by requirements and guidelines set forth by NASCAR, and as generally set forth on document attached as *Exhibit C*. Such uniforms shall be worn by Driver throughout every Race and throughout all practice, qualifying and other activities at each Race Event. Additionally, each year of the contract period, Owner shall provide raceday "crew shirts" and fire suits bearing Sponsors Identifications. All Sponsor Identifications and the design of all uniforms of Team members shall be subject o Sponsor's prior written approval, not to be unreasonably withheld or delayed. Owner shall maintain all such apparel in good and attractive condition at all times during the Contract Period. Owner, at Sponsor's request, shall refurbish the Driver and crew firesuits and crew shirts one other time during each season of the Contract Period. Beyond the two uniforms per season, Sponsor shall have the right to refurbish such uniforms and apparel as they wish, however, Sponsor will be responsible for the cost of such.

(8)    Sponsor shall be the exclusive provider of T-shirts and other related apparel to the Team and Team merchandise sold trackside or elsewhere. Sponsor acknowledges, however, that Driver's primary NASCAR Nextel sponsor (Cingular Wireless) and owner (Richard Childress Racing) order and market apparel items bearing Driver's name and likeness, and in such cases the selection of apparel manufacturer for such uses is out of the control of Driver/Owner. In such respect, Sponsor shall provide t-shirts and other assorted apparel and merchandise such a golf shirts, caps, light weight jacks, bags, etc. bearing Sponsor Identifications which all Team members shall wear and/or use at all official functions organized by NASCAR, Tracks and/or the Team held during the Contract Period which such persons attend. Additionally, any apparel orders made directly by Owner and/or Team for its own marketing, distribution and retail sales purposes shall be done so through Sponsor for the term of this Agreement. Subject to availability and credit approval, Sponsor shall provide Driver and/or Team with Sponsor's best price and terms for products.

9)    Owner shall provide a wall banner and garage banner containing Sponsor Identifications

or as otherwise identified on *Exhibit B* and nothing else, and display it and no other identifying matter of any entity or product or service, unless approved by Sponsor, throughout each Race in the pit from which the Car is serviced. Owner shall also display Sponsor Identifications specified by Sponsor on all appropriate materials, accessories and Race Support Equipment, including but not limited to pit box, car covers, etc., necessary for the proper and professional operation of the Team. All such designs and uses shall be approved by Sponsor before application and such approval shall be timely and not unreasonably withheld.

(10)    Owner shall cause Sponsor Identification to be embroidered on Owner's NASCAR. Nextel Cup Series race uniform as described in *Exhibit C* in a location and size consistent with existing sponsors. Such Sponsor recognition is contingent upon approval of the Owner's Nextel Cup Series car owner Richard Childress Racing.

(11)    Owner and Driver may qualify, practice and compete in the Indianapolis 500. In consideration of such right, Owner shall provide complimentary associate sponsorship on the nose of Owner's Indianapolis 500 car as described in *Exhibit C*. In connection with such sponsorship, Owner shall provide Sponsor with four (4) "Double Duty Tour" packages in each year of the Contract Period; provided that Owner provides such tour to the general public. Additional "Double Duty Tour" packages can be purchased by Sponsor at the commercial rate (2004 rate is $1,100).

## C.    *The Driver and the Substitute Driver*

(1)    Owner will, at its sole expense, cause the Driver to drive a Car in each of the Races (other than those for which the Car has not qualified after the Driver has driven it in the time trials connected therewith). If at any time during the Contract Period, Owner uses a Substitute Driver or Alternative Driver, defined herein in Sections 2(C)(2) and (3), Owner will assure that the Substitute or Alternative Driver is contractually obligated to perform the service set forth herein as if he/she was the original Driver.

(2)    If the Driver is unable by reason of injury or illness, unless terminated by the provisions set forth in Subsection 2 (C)(3), to drive the Car in a Race, then Owner shall provide, at its sole expense, a substitute driver, subject to Sponsor's approval, not to be unreasonably withheld (the "Substitute Driver"). The Substitute Driver shall drive the Car only during the period of time that the Driver is unable to drive the Car. Owner shall ensure that the Driver and Substitute Driver each have a valid NASCAR License and have sufficient training and skill to operate the Car properly, and Owner will use its best efforts to assure that the Substitute Driver has driving skills comparable to those of the Driver. If the Substitute Driver is unable to drive the Car or perform services outlined herein to Sponsor's satisfaction for any reason, Owner shall provide another Substitute Driver in accordance with the provisions of this subsection.

(3)    If at any time during the Contract Period, the Owner wishes to change Driver or must change due to death of Driver, Owner shall confer with Sponsor and recommend alternate Driver candidates to Sponsor who have sufficient training and skill to operate the Car properly, and will use best efforts to assure that the alternate Driver has driving skills comparable to those of the Driver ("Alternative Driver"). If the Owner and Sponsor are unable to agree on an Alternate

Driver, the Sponsor may terminate the Agreement upon written notice and, in that case, shall be entitled to a prorata refund of the unearned portion of any paid Sponsorship Fees. If the Alternative Driver is unable to drive the Car or perform services outlined herein to Sponsor's satisfaction for any reason, Owner shall provide another Alternative Driver in accordance with the requirements of this Section.

(4)     Owner will cause the Driver to be available to make the following appearances at promotional events scheduled by Sponsor and make Driver available for photo shoots as set forth in section 2(C)4(b):

(a)     Owner shall cause Driver to be available to make public speaking engagements, scheduled in a reasonable fashion so as not to interfere with raceday duties, race weekend, or testing duties, or certain personal, family or health situations that may arise. Driver shall be available to make six (6) such appearances outside of the track for tradeshows, video/photo sessions and/or similar events, not to exceed eight (8) hours in duration unless mutually agreed upon by the Driver, Owner and Sponsor in advance. Additionally, Owner shall cause Driver to provide two (2) three (3) hour appearances within a 50 mile radius of Charlotte, NC area. In addition to the aforementioned appearances, Owner shall assure that Driver will use his best efforts to make one (1) trackside/hospitality appearance per race not to exceed thirty (30) minutes in duration, subject to the limitations in this paragraph. It is expressly agreed that Sponsor shall endeavor to (at least ten (10) days prior) notice to Driver or Substitute Driver of such appearances.

(b)     Any such appearance beyond those specified in section 2(C)4(b) shall be at a cost of Ten Thousand Dollars ($10,000.00) to Sponsor and shall not be included in the Sponsorship fee.

(c)     If at any time during the Contract Period a Substitute or Alternative Driver is utilized, Owner shall be available to make public speaking engagements, scheduled in a reasonable fashion so as not to interfere with raceday duties, race weekend, or testing duties, or certain personal, family or health situations that may arise. Owner shall be available to make four (4) such appearances. It is expressly agreed that Sponsor shall endeavor to provide (at least ten (10) days) notice to Owner as possible, and that no such appearance shall exceed four (4) hours in duration unless mutually agreed upon by the Owner and Sponsor in advance.

(d)     Sponsor shall reimburse Driver and/or Owner for all reasonable, documented out-of-pocket expenses, according to Sponsor's Travel & Entertainment Policy (attached as Exhibit E and incorporated by reference) including, but not limited to: first class air transportation, lodging, meals, etc., for any and all appearances and/or photo/video sessions as required by the terms of this Agreement. If air travel is done on a private aircraft instead of first class commercial, Sponsor agrees to pay a pre-set hourly rate of no more than $1,100 for such travel.

(e)     During the term of this Agreement, Owner shall take all measures necessary to ensure that driver shall be available at all events and races as set forth in this Agreement.

(f)     Owner and Driver will be primarily responsible for developing and maintaining a positive public image for the Team and Sponsor. To facilitate this aim and in recognition of Sponsors

sensitivity to any adverse publicity with respect to the Team, Owner and Driver will be responsible for the public image of the Race Team and including but not limited to, any statements by them in connection with press conferences, media contracts or public gatherings, whether at a Race or otherwise. In this respect, Owner will assure that the Driver makes no statement which may be detrimental to Sponsor. Additionally, Owner and Driver will, at all times, conduct and continue to conduct himself with due regard to public morals, conventions, statutes, regulations and ordinances. Owner and Driver shall not do or cause to be done, or participate in any action which is or may be in violation of any Federal, State or local statute, regulation or ordinance, excepting minor traffic violations

(g)     Owner and Driver will use their best efforts to obtain favorable exposure for Sponsor and will be available to assist Sponsor with public relations activities to a reasonable extent. This shall include making members of the Race Team available for media interviews, press conferences or other public relations activity, as reasonably requested by Sponsor, at or near the Race sites on the dates the race team is at race sites pursuant to their obligations hereunder. The time and place of the appearances shall be requested in writing by Sponsor at least ten (10) business days in advance. Further, race team members will mention Sponsor, or any other reasonable message as directed by Sponsor, in any media interviews or activities, to the best of their ability. Driver and Owner agree to review Sponsor's media kit, participate in media relations training provided by Sponsor, and to use best efforts to represent the Team, Car and Sponsor in public appearances and in connection with Racing Events in a manner consistent with the wishes of Sponsor as primarily expressed in the media kit and training.

(h)     Owner shall assure and require Driver to submit to drug and substance use tests, as required by the governing authorities of the NASCAR Program or any other program under this Agreement, as reasonably required by Team or requested by Sponsor. Driver must pass all such tests without any adverse indications.

(i)     Team, during the Contract Period, shall not permit and shall cause Driver not to participate in or contract with respect to any promotion, advertisement, personal endorsement, television or radio interview, commercial, testimonial or licensing of any service or product that may be competitive with those of Sponsor without the express written permission of Sponsor.

(j)     Owner represents it is unaware of any physical, mental or other condition that would preclude Driver from competing or from satisfying all of the Driver-related obligations, under this Agreement, or in any of the Race and/or Driver related services required by this Agreement. Owner further represents Driver has made the preceding representation to it. Owner shall provide, and cause Driver to provide, Sponsor with prompt written notice of any adverse mental or physical condition of Driver discovered by Owner that would preclude Driver from providing the Driver-related services required by this Agreement. As evidence of such condition during the Contract Period of this Agreement, Driver shall maintain the ability to pass an aerobics test in which the heart rate is increased to age/maximum as established by the American Heart Institute after which it is reduced 30% of maximum, maintained for no less than 10 minutes and recovered to a 65% within a four (4) minute rest period. Additionally, Driver shall, at Owner's sole and exclusive cost and expense, undergo a complete physical examination utilizing physicians.

hospitals and/or examination procedures and personnel mutually agreed upon by Owner at any time during the Contract Period.

### D.   Transporter and Equipment

Owner shall, at its sole expense, provide a Transporter, all appropriate pit tools and equipment, spare parts and additional equipment and parts required to properly support and transport the Cars to be provided by Owner at each Race Event (collectively "Race Support Equipment"). Owner shall maintain and operate the Race Support Equipment in good and attractive order, repair and condition at all times during the Contract Period. Subject to Section 2(B)(2), Race Support Equipment shall bear the Sponsor Identifications in size, color and styles and in accordance with industry norms. Such approval shall be timely made and shall not be unreasonably withheld.

### 3.   Term

(a)   The term of this Agreement shall commence upon execution of this Agreement and, unless sooner terminated or unless renewed in accordance with the provisions hereof, shall end following the last race in the 2006 NASCAR Busch Series racing season, as listed on generally *Exhibit A*.

(b)   Sponsor will evaluate the sponsorship on or before August 1st of each respective year of the Contract Period. If in the sole reasonable judgement of the Sponsor the program fails to substantially meet reasonable expectations, Sponsor shall have the option to terminate this Agreement. Written notice of such termination must be given to Owner on or before August 1st of each respective year of the Contract Period and all subsequent rights and obligations shall be null and void.

### 4.   Advertising and Promotion

(a)   Owner hereby grants Sponsor the category exclusive right and license to use, reproduce and publish worldwide (without limitation as to media format or the manner in which presented), during the term of this Agreement, (i) the names, photographs, videotapes, voices, images, biographical data and information, other personal attributes, likenesses, information and data of or concerning Owner and Driver, and (ii) any of Owner's trademark and/or trade dress rights in the Cars, in any form or manner and in any media or medium in connection with the promotion or advertising of the Sponsor's business, products or services (including, without limitation, brand specific advertising) or of the sponsorship program described in this Agreement as well as the right and license (together with the right to sublicense) to produce and sell miniature replicas of any of the Cars and items of apparel and of any other kind or nature bearing or accompanied by any of the foregoing matter. Failure of Owner/Driver to object in writing to any such proposed use within ten(10) days shall be deemed approval by Owner/Driver of such use. Such personal attributes, images and identifying material and data may be used alone or in conjunction with each other and/or sketches, cartoons, captions, films, art work, textual matter or other photographs, images, reproductions, renditions, materials, information or data of whatsoever kind or nature.

(b)    All pictures, prints, motion pictures, audio or visual tapes, artists renderings, plans, ideas, concepts and other things, which are made or prepared by Sponsor or its agents in connection with its sponsorship of the Team or the Cars shall be and remain the exclusive property of Sponsor. Sponsor shall have the right to obtain, register and otherwise perfect sole and exclusive ownership of any of the aforementioned items in itself by means of copyright, trademark. service mark or other proprietary interest, anywhere at any time and shall have the right to use any such items during the term of this Agreement, in any manner, when and where it may designate, without any claim on the part of the Owner or any third party to any right of ownership o right to additional compensation. It is understood that while Sponsor has the right to use representations of the Car, certain aspects of the Car (e.g., Associate Sponsor identity and the number) are not the property of Sponsor. This Agreement shall not be construed as a transfer of any ownership interest in any of the items listed in this paragraph.

(c)    Owner shall use best efforts to assist Sponsor in securing the same or similar rights as set forth in Paragraph 4 from the Team Members. Any such efforts shall be at the sole expense of Sponsor.

## 5.    Sponsorship Fees

### A.    *Primary Sponsor*

As full compensation for all of Owner's obligations hereunder, Sponsor shall pay Owner as follows:

(1)    A "Sponsorship Fee" each year of the Contract Period in the amounts as described below:

| Year | Sponsorship Fee |
|------|-----------------|
| 2004 | $3,500,000 |
| 2005 | $3,750,000 |
| 2006 | $4,000,000 |

The respective Sponsorship Fee shall be paid to Camp & Associates, Inc., addressed as set forth in Section 18, to be placed in a separate account for the benefit of Owner. Such payments shall be made in the following quarterly installments, unless this Agreement is terminated pursuant to paragraphs 3(b) or 12:

| Sponsorship Year | Installment Date | Amount |
|------------------|------------------|--------|
| 2004 | Upon Execution | $1,400,000 |
|      | March 1, 2004 | $ 700,000 |
|      | June 1, 2004 | $ 700,000 |
|      | September 1, 2004 | $ 700,000 |
| 2005 | December 1, 2004 | $1,500,000 |
|      | March 1, 2005 | $ 750,000 |

|  |  | June 1, 2005 | $ 750,000 |
|  |  | September 1, 2005 | $ 750,000 |
|  | 2006 | December 1, 2005 | $1,600,000 |
|  |  | March 1, 2006 | $ 800,000 |
|  |  | June 1, 2006 | $ 800,000 |
|  |  | September 1, 2006 | $ 800,000 |

(2)     If any of the criteria set forth in the left column below are satisfied, Sponsor shall award Owner an incentive bonus equal to the amount adjacent thereto in the right column below.

| NASCAR Busch Series Championship | $50,000 |
| $2^{nd} - 5^{th}$ place finish in NASCAR Busch Series | $30,000 |

(3)     Sponsor shall have the option of prepaying any amount of this Sponsorship fee at any time before it comes due.

(4)     Sponsor shall have a right of first refusal to the rights granted by this Agreement for the 2007 and 2008 Race Seasons. Such right of refusal shall allow Sponsor the opportunity to match any existing bona fide offer or provide an acceptable, in the sole discretion of Owner, an alternative offer, however, this right does not require Owner to take less than an existing offer. Upon receiving a bona fide offer, Owner shall either provide a copy of it to Sponsor or certify, in writing, the existence and terms of the bona fide offer, for Sponsor's review and consideration. Additionally, such right of refusal shall apply no matter which series the Team plans to participate in, NASCAR Busch Series or NASCAR Nextel Series. Each option is to be exercised by August 1st preceding each season (i.e. should Sponsor elect to exercise this option for the 2006 NASCAR Busch Series Season and/or NASCAR Nextel Series Season, Owner shall be notified by August 1, 2007). Parties shall negotiate the Sponsorship Fee before such time as notice is given herein. If Owner moves the Team to the NASCAR Nextel Series prior to the 2007 season in a limited or full schedule, Sponsor shall be provided the same right of first refusal as outlined above.

(5)     Upon the receipt of a notice of renewal the parties hereto shall execute an addendum to this Agreement, which shall set forth, the payment schedule of said base fee for that particular season.

(6)     Any further renewals or extensions of this Agreement shall be governed by the same terms and conditions as set forth herein subject to 5(A)(4).

(7)     Should Owner cease racing operations, for any reason, during any racing season outlined in the Term of this Agreement, Sponsor will be obligated to pay the pro-rated contract based upon the number of races that have actually been entered and competed in by owner, or, if Sponsor has paid Sponsorship Fees in excess of the prorated amount of Sponsorship Fees earned, Owner shall refund the excess.

## B. Performance

Owner shall attempt to qualify for all NASCAR Busch Series Race Events outlined in *Exhibit A*. If for any reason during the Contract Period of this Agreement, Owner should fail to qualify for the first race of the season at Daytona, Owner shall receive a sponsorship return in the amount of $125,000 per race missed. If Owner should attempt but fail to qualify for any other race, then Sponsor will be entitled to $50,000 per missed race during that racing season (in which Sponsor is the primary sponsor). If Owner fails to qualify for any event, except Daytona, due to rain or other act of god, Owner may, in lieu of the $50,000 performance refund, participate in a substitute race ("Substitute Race"), subject to Sponsor's approval. If Owner and Sponsor are unable to agree on a Substitute Race or if a Substitute Race does not exist, Owner shall pay the $50,000 performance refund as outlined herein. If Owner should fail to qualify for more than one (1) race in any single season (in which Sponsor is the primary sponsor), then Sponsor has the option to renegotiate its sponsorship of Owner for the balance of the respective season. If after good faith negotiations, the parties cannot mutually agree on revised terms and conditions of sponsorship, Sponsor shall have the right to terminate this Agreement upon written notice to Owner, and to receive a refund of Sponsorship Fees paid which exceed the prorated amount of Sponsorship Fees earned. If, for example, Sponsor shall terminate the Agreement for the reasons outlined in this paragraph after Owner has attempted to qualify the Car in 12 of 24 Busch Series events in a Term year, then Owner shall refund any Sponsorship Fee payments to the extent they exceed 50% of the Sponsorship Fee owed for that Term year.

## C. Associate Sponsors

Owner shall be permitted to solicit additional associate sponsors for the Cars and Team during the term of this Agreement subject to the following terms:

(1)     Owner shall not solicit Associate Sponsorship from other entities that are reasonably deemed by Sponsor a conflict of interest with Sponsor.

(2)     Owner shall not solicit an associate sponsorship from companies engaged in business reasonably deemed by Sponsor to be offensive to Sponsor.

(3)     Owner shall be permitted to display the logos and other trademarks in positions on the Car and clothing of the Team members and driving suits in positions normally accepted in the industry as provided on the document hereto attached as *Exhibit C*, and approved by Sponsor, in its sole discretion. Approval from Sponsor shall be timely.

(4)     Owner and Driver shall be entitled to sell sponsorship locations on Driver's uniform and helmet subject to the limitations set forth herein. Sponsor acknowledges that as of the execution of this Agreement, Driver is under contract with Red Bull North America to wear and display a "Red Bull" painted race helmet for all driving disciplines in which the Driver participates including the NASCAR Busch Series. In the event that Driver does not renew this agreement at the conclusion of its term, Owner and Driver shall cause Sponsor to be displayed on Driver's race helmet in all races in which Driver competes with primary sponsorship from Sponsor. At minimum, Sponsor shall receive Sponsor Identification on the visor of Driver's helmet during all NASCAR Busch Series races in which Driver competes with primary sponsorship from Sponsor.

TGM 00050

(5)     In the event Owner does not have a commitment to display the name and/or trade mark of an Associate Sponsor in any of the areas listed as an "Associate Sponsor Area" on *Exhibit C* in a particular race, Sponsor may display its tradename/trademark temporarily for that race in such "Associate Sponsor Area". Sponsor shall pay no additional sponsor fees for such display but shall pay for any costs of the decals, installing the decals and removing the decals. In the event that Sponsor elects to display the Sponsor tradename and/or trademark in such area, it shall be promptly removed upon Owner entering any commitment with an associate sponsor.

(6)     Owner agrees that any contracts it may enter into with an associate sponsor shall contain provisions consistent with this paragraph 5 (C). Sponsor agrees that any contracts it may enter into with an associate sponsor whether with Owner or Sponsor shall contain provisions consistent with this paragraph.

## 6.     Trademarks

(a)     Fruit of the Loom, Inc., by signing below as Licensor of the Trademarks and Sponsor Identifications, hereby grants Owner a non-exclusive license to use and display the trademarks, service marks and trade dress of Sponsor ("Trademarks") which may from time to time be depicted on any of the Graphics, or on and in connection with the Car and any advertising, promotion, merchandising, products and related goods and materials thereof, subject to the provisions of section 2(B)2. Sponsor may elect to add any of its other trademarks or affiliated trademarks, such "BVD" and "Lofteez," to Exhibit upon written notice to Owner.

(b)     Owner agrees that any goods on which the Trademarks appear pursuant to the license herein granted shall be of high standard and of such style, appearance and quality as to be suited to the premium nature associated with the trademark. Furthermore, Owner agrees that the racing services provided under the Trademarks shall comply with the standards of racing set forth by NASCAR. Owner's policies of promoting its Team in association with the Trademarks shall also be of a high standard and shall in no manner reflect adversely upon the premium brand image associated with the trademark.

(c)     Owner recognizes and acknowledges the nature, the great value and the goodwill associated with the Trademarks and that all right, title and interest in and to the Trademarks and the goodwill related thereto are the sole and exclusive property of Sponsor or one of its affiliates. Sponsor warrants that it has the right to grant the trademark license herein granted. Owner shall not, and will use its best efforts to assure that the Driver and all other members of the Team shall not, directly or indirectly, acquire any ownership rights to the Trademarks by virtue of the right to use granted herein, and acknowledges that its use of the Trademarks pursuant to this Agreement inures to the benefit of Sponsor or an affiliate of Sponsor, as the case may be. Owner shall never challenge, contest or call into question the validity or ownership of the Trademarks, shall never contest Sponsor's right to use the Trademarks, and, except for using the Trademarks in accordance with the license granted herein, shall never use any trademarks, trade dress, logos or designs which Sponsor deems confusingly similar to the Trademarks.

(d)     All designs, drawings and graphics that incorporate any part of the Trademarks used in

association with the Trademarks shall belong to Sponsor. Owner hereby assigns and transfers to Sponsor the copyrights in all works of authorship created and in the future to be created that are used in association with the Trademarks, including all designs, drawings, text, pictures, logos, symbols, graphics, photographs, visual works, post cards and/or other artwork as far as the subject matter relates to Sponsor or the Trademarks. It is understood, however, that any such work of authorship in subject matter relating solely to the Team is the property of Owner, to the extent such work does not directly or indirectly incorporate the Trademarks or Sponsor Identifications.

(c)     Upon the termination or expiration of this Agreement, Owner shall, and shall cause the Driver and all other members of the Team to, immediately discontinue any and all use of Sponsor's name and of all of the Trademarks. Owner shall remove all such information and materials from each Car and from all Team uniforms, Driver's uniforms, helmets, banner and promotional materials, and from all other materials or things on which such name or Trademarks appear or are displayed, and Owner shall, as soon thereafter as reasonably possible, certify to Sponsor in writing that all of the foregoing have been destroyed or delivered to Sponsor.

(f)     All questions of enforcing rights in and to Sponsor's name and the Trademarks shall be controlled exclusively by Sponsor. Any actual or suspected infringement or imitation of such name or of any of the Trademarks that becomes known to Owner shall be reported promptly to Sponsor. Determination of whether to institute any demand, suit or action with regard to any such suspected or actual infringement or imitation shall be made solely by Sponsor and, if instituted, shall be instituted and maintained by Sponsor. Owner shall, and shall cause the Driver and any Substitute Driver or Alternate Driver to cooperate with Sponsor and Sponsor's counsel, in connection with Sponsor's investigation, prosecution or defense of such matter or action.

7.     **Royalties**

(a)     Sponsor, in cooperation with a selected business partner, will be responsible for making arrangements for all at-track merchandise sales, excluding Owner's direct sales from Owner's merchandise sales truck of which Sponsor merchandise shall receive approximately one-third of truck's sales space. A royalty based on gross sales revenues (excluding sales taxes collected) of all licensed product sales (the "Royalty") bearing both Driver and Sponsorship Identification shall be divided equally by Driver and Sponsor. If Owner or a third party shall sell merchandise which bears the Trademarks or Sponsor Identification and does not identify the Driver, the Car or the Owner, such seller shall pay Sponsor the full Royalty for such sales. If Sponsor or a third party shall sell merchandise which does not identify the Sponsor or its Trademarks, such seller shall pay the Owner the full Royalty for such sales. Royalty rates shall be determined on a case-by-case basis, with the agreement of the parties.

(b)     Payments thereof will be made within sixty (60) days of the close of the calendar quarters in which the respective royalty payments are received. At the time such payments are made, the seller shall provide to the other party a detailed report of licensed sales during such quarter, in a format to be approved by Owner and Sponsor, reasonably consistent with industry norms.

(c)     Any licensing or merchandising activity performed by Owner involving Sponsor will

TGM 00052

require the written approval of Sponsor, which shall not be unreasonably delayed, as well as any licensing or merchandising activity performed by Sponsor will require approval of Owner, which will not be unreasonably delayed.

## 8. Authorization and Release

Owner shall have each member of the Team, including, but not limited to, the Driver and any Substitute Drivers, and each person employed by or providing assistance to the Team sign and have notarized an Authorization and Release in the form set forth in *Exhibit D* attached hereto (each of which is a "Release"). Owner shall, on or before November 15, 2003 furnish Sponsor with an original notarized counterpart of the Releases signed by the Driver and each other Team member. Owner's compliance with the foregoing requirement shall be a condition precedent to the assumption by Sponsor of any obligations hereunder. Owner will not hereafter during the Contract Period employ or engage any Team member(s) without first obtaining from him or them and delivering to Sponsor a signed, notarized Release. Owner shall be fully bound by the provisions of the Release to the same extent as if Owner were a natural person over 21 years of age.

## 9. Insurance

(a)     Owner agrees to secure and maintain throughout the Contract Period liability insurance covering all activities directly or indirectly relating to or arising out of any performance of this Agreement and providing:

(i)     Comprehensive general liability coverage in amounts of not less than Ten Million Dollars ($10,000,000.00), combined single limit, for all damage, injuries and deaths arising from each accident or occurrence; and(ii)     property damage insurance in amounts of not less than Ten Million Dollars ($10,000,000.00), combined single limit, for all property damage arising from each accident or occurrence. Owner shall ensure that any of its contractors, subcontractors or licensees comply with the same insurance requirements. Certificates and/or copies of such insurance or policies or Owner, its contractors, subcontractors and licensees shall be filed with Sponsor within ten (10) days of the signing of this Agreement or, as applicable, prior to the performance of any contractor or subcontract work or prior to the effective date of any license. Such certificates shall show Sponsor, its subsidiaries and affiliates as "additional named insureds" and the policies shall be endorsed with a provision that the insurance applies as primary insurance with respect to Sponsor and shall not require contribution by any other similar insurance available to Sponsor. Such certificate shall also show that the coverage may not be canceled or modified without thirty- (30) days prior written notice to Sponsor. Failure to provide such certificate in the manner and time required by this Section 9 or to maintain the insurance shall be deemed a material breach of this Agreement.

(b)     Owner shall throughout the Contract Period maintain Worker's Compensation Insurance and Employer's Liability Insurance and any other type of insurance which is required by applicable law.

## 10. Indemnification

Owner will indemnify, hold harmless, and defend Sponsor, its parent, subsidiaries and other affiliates and their respective past, present and future officers, directors, employees, agents and, licensees, licensors and volunteer members from and against any and all claims, demands, suits or actions whether or not for personal injury, bodily injury (including death) and/or property damage (collectively, "Claims") and all liability, costs and expenses, resulting therefrom, related thereto or incurred in connection therewith, including reasonable attorneys fees, arising from, related to or in connection with (i) any act or omission of Owner, the Driver, or any other Team member or subcontractor of Owner in connection with or related to the performance of any of Owner's obligations hereunder, (ii) Owner's, the Driver's, any other Team member's, or the Car's racing activities or participation in the Races or any of the events or activities referred to in this Agreement, including, without limitation, practice or test sessions, promotional events and activities, travel, car fabrication and engine building, or any other activity of Owner, the Driver, or any other Team member or any subcontractor of Owner, whether pursuant to this Agreement or otherwise or (iii) the breach or incorrectness of any of Owner's warranties or representations herein contained. Owner assumes the risk of all injuries, including death, to all, persons, including, without limitation, the Driver, any of the other Team members and any member of the public, and of all damage to and destruction of property of whatever kind and by whomsoever, including loss of use thereof, and any other indirect, consequential or incidental damages resulting directly or indirectly, wholly or in part, from any activities in any way related to this Agreement of the Sponsor, its directors, officers, employees, licensees, agents, and volunteer members Owner, the Driver, any of the other Team members, any subcontractor of Owner, or the Car, and whether from acts of omission or commission, and whether undertaken pursuant to or required by this Agreement or otherwise, except to the extent caused by the negligent acts or omissions of the Sponsor, its directors, officers, employees, or agents. Notwithstanding the foregoing exception related to the negligent acts or omissions of the Sponsor, its directors officers, employees or agents, the foregoing indemnification will apply to all Claims otherwise covered thereby related to injury or death to any agent or employee of Sponsor, its parent or any of its subsidiaries or other affiliates. Owner acknowledges that any claim alleging Sponsor was responsible for an unsafe act by, or negligent in the selection of, Driver, Owner, Alternate Driver or Substitute Driver, or responsible for an unsafe condition or design of the Car or Cars, shall be disregarded for these purposes, and Sponsor shall be entitled to full indemnity by Owner regardless of any legal finding of fault or negligence on the part of Sponsor.

## 11. Warranties

### A. *Owner's Warranties.*

Owner warrants that:

(i)     it has the full right and authority to enter into and fully perform its obligations under this Agreement in accordance with its terms;

(ii)    it is the sole owner of all rights, licenses, privileges and property herein granted to Sponsor;

TGM 00054

(iii)    the rights granted to Sponsor hereunder and the performance by Owner and Driver of their obligations hereunder will not violate the rights of any third party;

(iv)    it will not do anything, which tends to limit, diminish or impair in any material way the rights, which Sponsor has acquired in this Agreement;

(v)    the execution, delivery and performance of this Agreement will not violate the provisions of any material agreement to which Owner or Driver is a party or by which it is bound; and

(vi)    all of the "owner's points" obtained by the Car during the racing season will for all purposes under the NASCAR rules be available to the Car in respect of the Race Events.

B.    *Sponsor's Warranties.*

Sponsor warrants that:

i)    it has the full right and authority to enter into and fully perform its obligations under this Agreement in accordance with its terms;

(ii)    it has the actual authority to grant all rights, licenses, and privileges to Owner as required by this Agreement. Sponsor shall indemnify, defend and hold Owner harmless for any infringement or other damages, including reasonable attorney's fees, that may arise as a result of the breach of this warranty by Sponsor to Owner.

(iii)    the rights granted to Owner hereunder and the performance by Sponsor of its obligations hereunder will not violate the rights of any third party;

(iv)    it will not knowingly do anything, which tends to limit, diminish or impair in any material way the rights, which Owner has acquired in this Agreement; and

(v)    the execution, delivery and performance of this Agreement will not violate the provisions of any material agreement to which Sponsor is a party or by which it is bound.

12.    **Termination**

(a)    In addition to any right of termination granted elsewhere in this Agreement, either party shall have the right to terminate this Agreement, without prejudice to any other legal right to which such terminating party may be entitled, upon the occurrence of any one or more of the following:

(i)    any breach by the other party, which, if capable of being cured, is not cured within thirty (30) days following written notice of such default to the defaulting party;

(ii)     the making by the other party of an assignment for the benefit of creditors;

(iii)    the appointment of a trustee, receiver or similar officer of any court for the other party, or for any substantial part of the property of the other party, whether with or without its consent;

(iv)     the institution of bankruptcy, composition, reorganization, insolvency or liquidation proceedings by or against the other party without, if such proceedings are instituted against such other party, their being dismissed within sixty (60) days from the date of the institution thereof, or

(v)      if any of the representations or warranties made by the other party set forth in this Agreement are untrue in any material respect.

(b)     Sponsor shall have the right to terminate this Agreement immediately or at any time after any of the following occurrences:

(i)      the Driver, Alternate Driver, Substitute Driver or any officer, director or shareholder of Owner during the contract Period, commits or has committed any act, or is charged with a felony, or has been or becomes involved in any situation or occurrence involving fraud, moral turpitude or otherwise reasonably tending to bring him into public disrepute, contempt, scandal or ridicule, or reasonably tending to shock, insult or offend any class or group of people, or reflecting unfavorably upon Sponsor's reputation or its products.

(ii)     if the Team and/or Driver fails to participate in any race activity or event, including specifically the first test session in Daytona held each year in January, without providing adequate excuse such as illness, injury or personal family emergency.

(iii)    if Team fails to finish in an average position of 20th place or better in all events operated by the Owner in each year of the Agreement.

(c)     Upon the termination of this Agreement for any reason, Owner shall remove all identification from the Cars, the Transporters, and all helmets, uniforms, caps and supporting equipment and materials of whatever nature and shall not use or refer to identification thereafter in connection with any Car, Transporter, or any member of the Team.

## 13.     Material Default.

If Owner defaults in the performance of or fails to comply with any term or condition hereof, Sponsor may terminate this agreement upon written notice to Owner, provided that Owner shall have thirty (30) days after receipt of such notice to cure such breach or, if such breach requires more than thirty (30) days to cure, Owner shall have taken such reasonable action within such period likely to effect the correction of the breach within a reasonable time and shall thereafter diligently pursue such action to completion.

If Sponsor defaults in the performance of or fails to comply with any term or condition hereof, Owner may terminate this agreement upon written notice to Sponsor, provided that Sponsor shall

have thirty (30) days after receipt of such notice to cure such breach or, if such breach requires more than thirty (30) days to cure, Sponsor shall have taken such reasonable action within such period likely to effect the correction of the breach within a reasonable time and shall thereafter diligently pursue such action to completion.

## 14. Credentials.

Sponsor will be provided four (4) single event licenses or sponsor coupons for each event throughout each season of this Agreement. The single event license requests per each event will be for person the age of majority and must be received by Camp & Associates, Inc., as addressed in Section 18, in writing fourteen (14) days prior to the event requested. Sponsor will also be provided two (2) annual credentials for use by Sponsor representatives each year of this Agreement.

## 15. Dispute Resolution.

Any dispute or claim arising out of or relating to this Agreement must be resolved in federal or state court in the state of North Carolina and the parties submit to such jurisdiction, without waiving service of process. The prevailing party shall be entitled to recover all costs of suit and actual document (or "reasonable", if fees are paid on a contingency basis) attorney's fees as determined by the court in any legal action arising from or otherwise related to this Agreement.

## 16. Confidentiality

Except as may be required by law, neither party shall without the written consent of the other party disclose any of the provisions of this Agreement to any third party, except as required by law or a court of competent jurisdiction.

## 17. Relationship of the Parties

This Agreement shall not be construed to create a partnership, joint venture or employer/employee relationship between the parties hereto, or to make either the agent of the other. The relationship of Owner to the Sponsor is solely that of an independent contractor. Consistent with the terms of this Agreement, Owner shall control all ways, means and methods relating to its racing operations and all other matters relating to its proper performance of this Agreement.

## 18. Notices and Approvals

All notice, approvals and other communications hereunder shall be in writing, and each shall be deemed given (i) on the day it is received or its receipt is rejected if it is mailed, postage prepaid, by certified or registered U. S. mail, return receipt requested, to the other party at the address set forth below or to such other address as may hereafter be designated by such party by written communication complying with this section, or if it is sent by private mail service paid for or payable for by the sender (e.g. Federal Express or Airborne Express) or (ii) on the date it is sent by facsimile transmission to the fax number indicated below or to such other fax numbers may hereafter be designated by the recipient by written communication complying with this section

(provided that receipt of a facsimile transmission is confirmed by the transmission report issued at the time of transmission by the machine by which the facsimile is transmitted).

If Owner to:          Team Gordon, Inc.
                      210 Rolling Hill Rd.
                      Mooresville, NC 28117

                      Attn: Mr. John Story

If Sponsor To:      Camp & Associates, Inc.
                      78 Buffalo Avenue NW, Suite 200
                      Concord, NC 28025

                      Attn: Mr. Larry Camp

                      With a copy to:
                      John Shivel
                      Vice President, Advertising
                      Fruit of the Loom
                      One Fruit of the Loom Drive
                      Bowling Green, KY  42103

## 19.    Assignment

The parties hereto may not, assign, license, transfer, convey, delegate, grant, subordinate, pledge or encumber all or any part of its rights, duties or obligations under this Agreement to any other person or entity without the express written consent of all parties.

## 20.    No Waiver

The failure of either party to this Agreement to object to or take affirmative action with respect to any conduct of the other party which is in violation of the terms hereof shall not be construed as a waiver thereof or of any such violation on any future occasion.

## 21.    Rights Unique

The rights and privileges granted by Sponsor hereunder are special, unique, extraordinary and impossible of replacement, which gives them a peculiar value, the loss of which could not be reasonably or adequately compensated in damages in an action at law, and Owner's failure or refusal to perform its obligations hereunder would cause Sponsor irreparable loss and damage. If Owner fails or refuses to perform any of its material obligations hereunder, Sponsor shall be entitled to injunctive or other equitable relief against Owner to prevent the continuance of such failure or refusal or to prevent Owner from granting rights to others in violation of this Agreement.

## 22.    Rights and Remedies Cumulative

TGM 00058

All of the rights and remedies either party may have by law, statute, ordinance, or otherwise are intended to be cumulative and the use of any one right or remedy by either party shall not preclude or waive the right to use any or all other rights or remedies.

## 23. Headings

The section headings in this Agreement are for convenience of reference only and do not constitute a substantive part of the Agreement.

## 24. Entire Agreement

The terms and obligations arising under this Agreement shall be construed in accordance with the laws of the State of North Carolina.

The terms of this agreement constitute the entire understandings of the Parties. Any modifications or changes must be made in a writing executed by all parties hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

OWNER

By: _____
Its: _Pres / Driver_
Date: _10-20-03_

SPONSOR

By: _____ Fruit of The Loom Sales
Its: _Sr. V.P_
Date: _10-21-03_

Agreed & Accepted:
Fruit of the Loom, Inc., as Licensor

By: _____
Its: _President_
Date: _10-22-03_

Case 3:06-cv-00201-RJC-DCK   Document 46-12   Filed 07/23/08   Page 22 of 37
TGM 00059

## Exhibit A

(1)    Owner shall race the Car in the Race Events highlighted below.  However, if both parties mutually agree, the event schedule can be changed.

### 2004 NASCAR Busch Series Schedule

| Date | Facility | TV |
|------|----------|-----|
| *Feb 14* | *Daytona International Speedway, Daytona Beach, FL* | *NBC* |
| *Feb 21* | *North Carolina Speedway, Rockingham, NC* | *FX* |
| *Mar 6* | *Las Vegas Motor Speedway, Las Vegas, NV* | *FX* |
| *Mar 20* | *Darlington Raceway, Darlington, SC* | *FX* |
| *Mar 27* | *Bristol Motor Speedway, Bristol, TN* | *FOX* |
| *Apr 3* | *O'REILLY 300, Texas Motor Speedway, Ft. Worth, TX* | *FOX* |
| Apr 10 | Nashville Superspeedway, Nashville, TN | FX |
| Apr 24 | Talladega Superspeedway, Talladega, AL | FOX |
| *May 1* | *California Speedway, Los Angeles, CA* | *FOX* |
| May 8 | Gateway International Raceway, St. Louis, MO | FX |
| *May 14* | *Richmond International Raceway, Richmond, VA* | *FX* |
| May 23 | Nazareth Speedway, Nazareth, PA | FX |
| May 29 | Lowe's Motor Speedway, Charlotte, NC | FX |
| *Jun 5* | *Dover International Speedway, Dover, DE* | *FX* |
| Jun 12 | Nashville Superspeedway, Nashville, TN | FX |
| *Jun 19* | *Kentucky Speedway, Sparta, KY* | *FX* |
| Jun 27 | The Milwaukee Mile, Milwaukee, WI | FX |
| *Jul 2* | *Daytona International Speedway, Daytona Beach, FL* | *FX* |
| *Jul 10* | *Chicagoland Speedway, Chicago, IL* | *NBC* |
| *Jul 24* | *New Hampshire International Speedway, Loudon, NH* | *TNT* |
| Jul 31 | Pikes Peak Int'l Raceway, Colorado Springs, CO | TNT |
| *Aug 7* | *Indianapolis Raceway Park, Ind., IN* | *TNT* |
| *Aug 21* | *Michigan International Speedway, Brooklyn, MI* | *TNT* |
| *Aug 27* | *Bristol Motor Speedway, Bristol, TN* | *TNT* |
| *Sep 4* | *California Speedway, Los Angeles, CA* | *NBC* |
| *Sep 10* | *Richmond International Raceway, Richmond, VA* | *TNT* |
| Sep 25 | Dover International Speedway, Dover, DE | TNT |
| *Oct 9* | *Kansas Speedway, Kansas City, KS* | *TNT* |
| *Oct 15* | *Lowe's Motor Speedway, Charlotte, NC* | *TBD* |
| Oct 23 | Memphis Motorsports Park, Memphis, TN | TNT |
| *Oct 30* | *Atlanta Motor Speedway, Atlanta, GA* | *TNT* |
| *Nov 6* | *Phoenix International Raceway, Phoenix, AZ* | *NBC* |
| *Nov 13* | *Darlington Raceway, Darlington, SC* | *TNT* |
| *Nov 20* | *Homestead-Miami Speedway, Miami, FL* | *NBC* |

TENTATIVE-SUBJECT TO CHANGE

As per the 2005 and 2006 seasons, such schedules have not been released and traditionally will not be released by NASCAR until September or October of the preceding year.  However Owner and Sponsor understand that the above schedule is representative of future seasons and subject only to minor changes.

(2)    If additional primary sponsorship is acquired for the remaining ten (10) races in each NASCAR Busch Series season during the Contract Period, Owner will provide Sponsor with

TGM 00060

## Exhibit A

(1)     Owner shall race the Car in the Race Events highlighted below. However, if both parties mutually agree, the event schedule can be changed.

### 2004 NASCAR Busch Series Schedule

| Date | Facility | TV |
|------|----------|-----|
| Feb 14 | Daytona International Speedway, Daytona Beach, FL | NBC |
| Feb 21 | North Carolina Speedway, Rockingham, NC | FX |
| Mar 6 | Las Vegas Motor Speedway, Las Vegas, NV | FX |
| Mar 20 | Darlington Raceway, Darlington, SC | FX |
| Mar 27 | Bristol Motor Speedway, Bristol, TN | FOX |
| Apr 3 | O'REILLY 300, Texas Motor Speedway, Ft. Worth, TX | FOX |
| Apr 10 | Nashville Superspeedway, Nashville, TN | FX |
| Apr 24 | Talladega Superspeedway, Talladega, AL | FOX |
| May 1 | California Speedway, Los Angeles, CA | FOX |
| May 8 | Gateway International Raceway, St. Louis, MO | FX |
| May 14 | Richmond International Raceway, Richmond, VA | FX |
| May 23 | Nazareth Speedway, Nazareth, PA | FX |
| May 29 | Lowe's Motor Speedway, Charlotte, NC | FX |
| Jun 5 | Dover International Speedway, Dover, DE | FX |
| Jun 12 | Nashville Superspeedway, Nashville, TN | FX |
| Jun 19 | Kentucky Speedway, Sparta, KY | FX |
| Jun 27 | The Milwaukee Mile, Milwaukee, WI | FX |
| Jul 2 | Daytona International Speedway, Daytona Beach, FL | FX |
| Jul 10 | Chicagoland Speedway, Chicago, IL | NBC |
| Jul 24 | New Hampshire International Speedway, Loudon, NH | TNT |
| Jul 31 | Pikes Peak Int'l Raceway, Colorado Springs, CO | TNT |
| Aug 7 | Indianapolis Raceway Park, Ind., IN | TNT |
| Aug 21 | Michigan International Speedway, Brooklyn, MI | TNT |
| Aug 27 | Bristol Motor Speedway, Bristol, TN | TNT |
| Sep 4 | California Speedway, Los Angeles, CA | NBC |
| Sep 10 | Richmond International Raceway, Richmond, VA | TNT |
| Sep 25 | Dover International Speedway, Dover, DE | TNT |
| Oct 9 | Kansas Speedway, Kansas City, KS | TNT |
| Oct 15 | Lowe's Motor Speedway, Charlotte, NC | TBD |
| Oct 23 | Memphis Motorsports Park, Memphis, TN | TNT |
| Oct 30 | Atlanta Motor Speedway, Atlanta, GA | TNT |
| Nov 6 | Phoenix International Raceway, Phoenix, AZ | NBC |
| Nov 13 | Darlington Raceway, Darlington, SC | TNT |
| Nov 20 | Homestead-Miami Speedway, Miami, FL | NBC |

associate placement as set forth in *Exhibit C* for the remaining races with a driver ("Associate Driver") to be determined, subject to Sponsor's approval, not to be unreasonably withheld. Once the Associate Driver is selected, Owner and Sponsor will mutually agree on services to be provided by Associate Driver.

TGM 00062

## Exhibit B

Sponsor Name, Trademarks, Tradedresss & Taglines
Fruit of the Loom
Fruit Cluster Design
Fruit of the Loom oval logo Fruit of the Loom, Inc.
(to be supplemented)

TGM 00063

## Exhibit C

### Sponsor Identification and Placement on Car(s)

(1)    Owner shall cause Graphics identifying Sponsor Identifications or any other Sponsor approved entity to be affixed to the Cars in areas listed below.

(a)    NASCAR Busch Series Car primary placement and color scheme (24 Primary Races as set forth in *Exhibit A*)

> i. Car Hood – 1,375 sq. inches (approximately 24" by 55")
> ii. Car Upper Rear Quarter Panels – 900 sq. inches each (approximately 10" by 45" each)
> iii. Car TV Panel – 75% of available space 240 sq. inches (approximately 34" by 7")

(b)    NASCAR Busch Series Car associate placement (pending acquisition of primary sponsorship for remaining 10 Races as set forth in *Exhibit A*)

> i. Car Lower Rear Quarter Panels
> ii. Car B-post
> iii. Car TV Panel – 30% of available space 240 sq. inches

(c)    Indy 500 Car

> i. Associate sponsorship position on the nose (approximately 10" by 5" each)

(2)    Owner shall provide the equipment and uniforms listed below with signage bearing Sponsor Identifications in the size and/or locations listed.

(a)    NASCAR Busch Series Uniform and Equipment (24 Primary Races listed in *Exhibit A*)

> i. Driver's Helmet 18 sq. inches visor strip
> ii. Driver's Firesuit 220 sq. inches on front and back of suit, 6 sq. inches on both sides of collar, 12 sq. inches on upper arms and full leg panels (including primary color scheme)
> iii. Crew Member Firesuits 220 sq. inches on front and back, 6 sq. inches both sides of collar, 12 sq. inches on upper arms and full leg panel (including primary color scheme)
> iv. Crew Work Shirts 220 sq. inches on front and back, 6 sq. inches on both sides of collar and 12 sq. inches upper arms (including primary color scheme)
> v. Crew Helmets 20 sq. inches (including primary color scheme)

      vi.  Left and right side of Team transporter approximately 70% of the transporter – (including primary color scheme)

     vii.  Team Pit Wagon 1150 sq. inches (including primary color scheme)

   viii.  Team Pit Sign Board 600 sq. inches

     ix.  Team Pit Sign 700 sq. inches (including primary color scheme)

(b)    NASCAR Busch Series Uniform and Equipment (pending acquisition of primary sponsorship for remaining 10 Races as set forth in *Exhibit A*)

       i.  Driver's Firesuit on upper chest

      ii.  Crew Firesuits on upper chest

    iii.  Crew Uniforms on upper chest

    iv.  Equipment Signage to be mutually determined by Owner and Sponsor

(c)    NASCAR Nextel Cup Series No. 31 Owned by Richard Childress Racing

       i.  Driver's Firesuit 8 sq. inches on sleeves

(d)    Indy 500 Uniform

       i.  Driver's Firesuit 8 inches on chest or sleeves (location depending on design of uniform)

(e)    Sponsor's identification will be featured on Team Gordon's website.

(f)    Owner reserves the right to sell associate sponsorship on the Car and driver's uniform in areas not specifically listed above, subject to Sponsor's right of first offer, approval , and other condition set forth in Subsection 5(C), including the Rear Deck Lid, B and C Posts, Lower Rear Quarter Panels, and miscellaneous associate location on the Indy 500 car.

## *Exhibit D*

## *RELEASE*

I, *Team Member*, for one dollar and other good and valuable considerations, the receipt of which is hereby acknowledged, for ourselves, our heirs, executors and administrators, o hereby release and forever discharge Sponsor (collectively Camp & Associates, Inc. and Fruit of the Loom, Inc.), their parent companies and affiliates, and their respective officers, directors, stockholders, and employees, of and from any and all actions, causes of action, suits, damages, claims and demands whatsoever, in law or in equity, against the foregoing parties:

(a)    as a result of any accident arising out of my services for Sponsor, including, without limitation, activities in the pit at race car events or as a result of our being in attendance at any event or function in which am working, including traveling to and from races, which we ever had now have or may have in the future; or

(b)    as a result of any use of Team Member's name or likeness in connection with the promotion, in any form or media, whether now existing o later developed, of the Team, Cars, Driver or Sponsor, or in connection with the sale of any merchandise, in any channels of distribution, elated to the Team, Cars, Driver or Sponsor.

The foregoing Releases shall be binding upon our heirs, executors or administrators;

*Team Member*

Date:                    _____

*Team*

_____

*Exhibit E*

Sponsor's Travel & Entertainment Policy

## ADDENDUM TO SPONSORSHIP AGREEMENT

This agreement made the 23rd of February, 2004 shall serve as an addendum (the "Addendum") to the Sponsorship Agreement (the "Agreement") between *Team Gordon, Inc.* ("Owner") and *Camp & Associates, Inc., as agent for Fruit of the Loom, Inc.* ("Sponsor"), fully executed on October 22, 2003.

By execution of this Addendum, all parties agree to the revised highlighted Race Events schedule attached hereto and incorporated by reference as *Exhibit A.*

Additionally, by execution of this Addendum, all parties agree to provide all notice, approvals and communications hereunder to Owner at the following address:

> Team Gordon
> 10615 Twin Lakes Parkway
> Charlotte, NC 28221    28269

Except as modified in this Addendum, all other Terms of the Agreement are hereby confirmed and ratified.

CAMP & ASSOCIATES, INC.

By: _____
Larry Camp, President

Date: 2-23-0*4*

TEAM GORDON, INC.

By: _____

Title: _____

Date: 3/11/04

## Exhibit A

(1)  Owner shall race the Car in the Race Events highlighted below.  However, if both parties mutually agree, the event schedule can be changed.

*2004 NASCAR Busch Series Schedule*

**2004 NASCAR SCHEDULES**

| CITY | BUSCH SERIES | Race (Busch) | TV | NEXTEL CUP | Race (Nextel) |
|---|---|---|---|---|---|
| Daytona, FL | -- | -- | | 2/7 | Bud Shootout |
| | -- | -- | | 2/12 | Gatorade 125 |
| | -- | -- | | 2/12 | Gatorade 125 |
| | 2/14 | Hersey Kiss 300 | NBC | 2/15 | Daytona 500 |
| Rockingham, NC | 2/21 | Rockingham 200 | FX | 2/22 | Subway 400 |
| Las Vegas, NV | 3/6 | Sam's Town 300 | FX | 3/7 | UAW Daimler Chrysler 400 |
| Atlanta, GA | -- | -- | | 3/14 | Golden Corral 500 |
| Darlington, SC | 3/20 | Diamond Hill Plywood 200 | FX | 3/21 | Carolina Dodge Dealers 400 |
| Bristol, TN | 3/27 | Sharpie Pro 250 | FOX | 3/28 | Food City 500 |
| Ft. Worth, TX | 4/3 | O'Reilly 300 | FOX | 4/4 | Samsung/Radio Shack 500 |
| Nashville, TN | 4/10 | Pepsi 300 by Mapco | FX | -- | |
| Martinsville, VA | -- | -- | | 4/18 | Advance Auto Parts 500 |
| Talladega, FL | 4/24 | Aaron's 312 | FOX | 4/25 | Aaron's 499 |
| Fontana, CA | 5/1 | 1-800-PIT Shop.com 300 | FOX | 5/2 | Auto Club 500 |
| Gateway Intl' | 5/8 | TBD | FX | -- | |
| Richmond, VA | 5/14 | NASCAR Busch Series 250 | FX | 5/15 | Pontiac Performance 400 |
| Nazareth, PA | 5/23 | Goulds Pumps ITT Ind. 200 | FX | | |
| Concord, NC (Lowe's) | -- | -- | | 5/22 | NASCAR Nextel All Star Challenge |
| Concord, NC (Lowe's) | 5/29 | Car Quest 301 | FX | 5/30 | Coca Cola 600 |
| Dover, DE | 6/5 | MBNA America 200 | FX | 6/6 | MBNA America 400 |
| Nashville, TN | 6/12 | Federated Auto Parts 300 | FX | -- | |
| Long Pond, PA (Pocono) | -- | -- | | 6/13 | Pocono 500 |
| Sparta, KY | 6/19 | Meijer 300 by Oreo | FX | -- | |
| Brooklyn, MI | -- | -- | | 6/20 | Michigan 400 |
| West Allis, WI | 6/26 | TBD | | -- | |
| Sonoma, CA (Infincon) | -- | -- | | 6/27 | Dodge/Save Mart 350 |
| Daytona, FL | 7/2 | Winn-Dixie 250 by PepsiCo | FX | 7/3 | Pepsi 400 |

| Location | | | | | |
|---|---|---|---|---|---|
| Joilet, IL (Chicagoland) | 7/10 | Twister 300 ✓ | NBC | 7/11 | Tropicana 400 |
| Louden, NH | 7/24 | New England 200 | TNT | 7/25 | New England 300 |
| Fountain, CO (Pikes Peak) | 7/31 | TBD | TNT | -- | |
| Long Pond, PA (Pocono) | -- | -- | | 8/1 | Pensylvania 500 |
| Indianapolis, IN | 8/7 | Kroger 200 by Tom Raper RV's ✓ | TNT | 8/8 | Brickyard 400 |
| Watkins Glen, NY | -- | -- | | 8/15 | Sirius at the Glen |
| Brooklyn, MI | 8/21 | Cabela's 250 ✓ | TNT | 8/22 | Michigan 400 |
| Bristol, TN | 8/27 | Food City 250 ✓ | TNT | 8/28 | Sharpie 500 |
| Fontana, CA | 9/4 | California Speedway.Com 300 ✓ | NBC | 9/5 | Pop Secret 500 |
| Richmond, VA | 9/10 | Funai 250 ✓ | TNT | 9/11 | Chevy Monte Carlo 400 |
| Louden, NH | -- | -- | | 9/19 | Sylvania 300 |
| Dover, DE | 9/25 | Stacker 200 by YJ Stinger | TNT | 9/26 | MBNA America 400 |
| Talladega, FL | -- | -- | | 10/3 | EA Sports 500 |
| Kansas City, KS | 10/9 | Mr. Goodcents 300 ✓ | TNT | 10/10 | Banquet 400 by ConAgra Foods |
| Concord, NC (Lowe's) | 10/15 | Little Trees 300 ✓ | TBD | 10/16 | UAW-GM Quality 500 |
| illington, TN (Memphis) | 10/23 | Sam's Town 250 | TNT | -- | |
| Martinsville, VA | -- | -- | | 10/24 | Subway 500 |
| Atlanta, GA | 10/30 | Aaron's 312 ✓ | TNT | 10/31 | Bass Pro Shops MBNA 500 |
| Avondale, AZ (Phoenix) | 11/6 | Bashas' Supermarkets 200 | NBC | 11/7 | Checker Auto Parts 500 |
| Darlington, SC | 11/13 | South Carolina 200 ✓ | TNT | 11/14 | Mountain Dew Southern 500 |
| Homestead, FL | 11/20 | Ford 300 ✓ | NBC | 11/21 | Ford 400 |

## SECOND ADDENDUM TO SPONSORSHIP AGREEMENT

This agreement made the 17th of January, 2005, shall serve as a second addendum (the "Second Addendum") to the Sponsorship Agreement (the "Agreement") between Team Gordon, Inc. ("Owner") and Camp & Associates, Inc., as agent for Fruit of the Loom, Inc. ("Sponsor"), fully executed on October 22, 2003.

By execution of this Second Addendum, all parties agree to change the Race Events schedule as outlined in Exhibit A(1) of the Agreement to allow for the deletion of 23 of the scheduled Busch Series events (with the exception of the 2005 Daytona 300 Busch Series event February 19, 2005 at Daytona International Speedway, and the addition of 10 NASCAR Nextel Cup events as per the attached schedule for 2005. For reference, a revised highlighted Race Events schedule is attached hereto and incorporated by reference. In addition to the event schedule change, it is also understood that reference to the Busch Series within the context of the agreement also extends to the NASCAR Nextel Cup Series. Except as modified by this Second Addendum, all other Terms of the Agreement are hereby confirmed and ratified.

CAMP & ASSOCIATES, INC.

By:: _____
Larry M. Camp, President

Date:_____

FRUIT OF THE LOOM, INC.

By:: _____

Title:_____

Date:_____

TEAM GORDON, INC.

By: _____
John Story, CEO

Date: 2 | 8 | 05

## Exhibit A

(1) Owner shall race the Car in the Race Events schedule as follows below. However, if both parties mutually agree, the event schedule can be changed.

### 2005 NASCAR Busch and Nextel Cup Schedule

| Date | Facility | TV |
|------|----------|-----|
| Feb 19 | Daytona International Speedway, Daytona Beach, FL | FOX |
| April 3 | Bristol Motor Speedway, Bristol, TN | FOX |
| May 21 | Charlotte Motor Speedway, Charlotte, NC | FOX |
| May 29 | Charlotte Motor Speedway, Charlotte, NC | FOX |
| July 2 | Daytona International Speedway, Daytona Beach, FL | NBC |
| Aug 7 | Indianapolis Motor Speedway, Indianapolis, IN | NBC |
| Sept 4 | California Speedway, Fontana, CA | NBC |
| Oct 2 | Talladega Superspeedway, Talladega, AL | NBC |
| Oct 23 | Martinsville Raceway, Martinsville, VA | NBC |
| Nov 6 | Texas Motor Speedway, Fort Worth, TX | NBC |
| Nov 13 | Phoenix International Raceway, Avondale, AZ | NBC |

# SECOND ADDENDUM TO SPONSORSHIP AGREEMENT

This agreement made the 17th of January, 2005, shall serve as a second addendum (the "Second Addendum") to the Sponsorship Agreement (the "Agreement") between **Team Gordon, Inc.** ("Owner") and **Camp & Associates, Inc.**, as agent for **Fruit of the Loom, Inc.** ("Sponsor"), fully executed on October 22, 2003.

By execution of this Second Addendum, all parties agree to change the Race Events schedule as outlined in Exhibit A(1) of the Agreement to allow for the deletion of 23 of the scheduled Busch Series events (with the exception of the 2005 Daytona 300 Busch Series event February 19, 2005 at Daytona International Speedway, and the addition of 10 NASCAR Nextel Cup events as per the attached schedule for 2005. For reference, a revised highlighted Race Events schedule is attached hereto and incorporated by reference. In addition to the event schedule change, it is also understood that reference to the Busch Series within the context of the agreement also extends to the NASCAR Nextel Cup Series. Except as modified by this Second Addendum, all other Terms of the Agreement are hereby confirmed and ratified.

**CAMP & ASSOCIATES, INC.**                    **TEAM GORDON, INC.**


By::_____                  By:_____
      Larry M. Camp, President                         John Story, CEO


Date:_____                   Date:_____


**FRUIT OF THE LOOM, INC.**


By::_____


Title:_____


Date:_____

## Exhibit A

(1) Owner shall race the Car in the Race Events schedule as follows below. However, if both parties mutually agree, the event schedule can be changed.

### 2005 NASCAR Busch and Nextel Cup Schedule

| Date | Facility | TV |
|------|----------|-----|
| Feb 19 | Daytona International Speedway, Daytona Beach, FL | FOX |
| April 3 | Bristol Motor Speedway, Bristol, TN | FOX |
| May 21 | Charlotte Motor Speedway, Charlotte, NC | FOX |
| May 29 | Charlotte Motor Speedway, Charlotte, NC | FOX |
| July 2 | Daytona International Speedway, Daytona Beach, FL | NBC |
| Aug 7 | Indianapolis Motor Speedway, Indianapolis, IN | NBC |
| Sept 4 | California Speedway, Fontana, CA | NBC |
| Oct 2 | Talladega Superspeedway, Talladega, AL | NBC |
| Oct 23 | Martinsville Raceway, Martinsville, VA | NBC |
| Nov 6 | Texas Motor Speedway, Fort Worth, TX | NBC |
| Nov 13 | Phoenix International Raceway, Avondale, AZ | NBC |

TGM 00074