# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CASE NO. 3:06-cv-201-RJC-DCK

| | |
|---|---|
| TEAM GORDON, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )     ORDER<br>) |
| FRUIT OF THE LOOM, INC., | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the Court on the parties' trial briefs (Doc. Nos. 112, 115, 116 & 119). The Court has reviewed the parties' arguments and has reached decisions regarding the matters raised. At the outset, the Court notes that it will not entertain dispositive motions that the Court has previously ruled upon but which have been re-asserted in the form of a trial brief.

## I. "Nature of NASCAR" evidence

Team Gordon ("TG") wishes to introduce evidence of NASCAR culture at trial. Fruit of the Loom ("FOL") objects to TG's use of such evidence.

As the Court indicated at the final pretrial conference, it intends as a general premise to allow TG to offer evidence regarding NASCAR culture. The Court finds such evidence relevant to the jury's inquiry regarding the standards of both section 3(b) and 12(b)(i) of the Sponsorship Agreement. FOL is free to present evidence and argue to the jury that TG is mischaracterizing NASCAR culture by focusing on a limited number of isolated incidents. However, the Court finds evidence of this nature both relevant and probative. FOL argues that the evidence is inconsistent with TG's claims that FOL was ignorant of NASCAR culture. Whether it acted reasonably and in good faith in terminating the Sponsorship Agreement is an objective inquiry, independent of FOL's

subjective awareness of NASCAR culture. Finally, as a general matter, the parol evidence rule does not keep the evidence out because it is offered to shed light on the reasonableness inquiry rather than to contradict or add to the terms of the agreement. See Drake v. Hance, 673 S.E.2d 411, 413 (N.C. Ct. App. 2009). Thus the Court will allow TG to offer evidence of the "nature of NASCAR."

Certain types of evidence, however, may or may not be admissible based on their form or focus. First, newspaper articles, videos, and print-outs of online news stories will generally not be admitted. Many courts have held newspaper articles are inadmissible hearsay when offered for the truth of what they assert. See Larez v. City of Los Angeles, 946 F.2d 630, 642 (9th Cir. 1991); United States v. Harris, 271 F.3d 690, 696 (7th Cir. 2001) ("daily newspapers are not reliable evidentiary sources"); Tyson v. Willauer, 290 F. Supp. 2d 278, 287 n.5 (D. Conn. 2003) (two newspaper articles attached to motion for summary judgment excluded as hearsay); Articulate Systems, Inc. v. Apple Computer, Inc., 53 F. Supp. 2d 62, 75 (D. Mass. 1999) (article from trade publication inadmissible hearsay). This Court agrees. Such items are hearsay even when offered for the purpose of explaining to the jury the nature of NASCAR. A listener or reader must first believe what is asserted in the article or video in order for it to have the effect of shedding light on NASCAR's culture. Thus these items are hearsay and inadmissible at trial

Evidence regarding other sponsors' decisions whether to terminate drivers under similar circumstances is also inadmissible. The Court does not wish to hold a mini-trial on other morals clauses not at issue in this case and how sponsors have responded to similar situations with drivers. Other sponsors may have different tolerance levels, allowing drivers to remain under contract even after violating a morals clause. Such evidence is not relevant to the issues at bar. Even if relevant, Federal Rule of Evidence 403 counsels against admission of such evidence, since the risk of unfair

prejudice that might attach to evidence of other sponsors allowing drivers to violate morals clauses without repercussion outweighs the evidence's probative value.

Evidence describing other drivers' controversial behavior, however, is admissible. FOL argues that whether other drivers behave reprehensibly is irrelevant to this case. However, unlike the "other sponsor" evidence, this evidence is more probative to the reasonableness inquiry. Drivers are the personalities who define the sport of NASCAR and its culture, and their actions help define the nature of the sport. Thus if presented in a form that is not hearsay and otherwise admissible, evidence of other drivers' controversial behavior will be admitted.

## II. FOL's Expert Witness

TG objects to FOL's designated expert, Jonathan Faber. Rule 702 of the Federal Rules of Evidence provides that if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702.

TG argues that Faber is unqualified as an expert on the relevant issues and that "all Mr. Faber does throughout the 15 pages of his report is review the facts as provided to him by FOL's counsel, apply those facts to the relevant provisions of the Sponsorship Agreement, and conclude that FOL was justified in terminating" the agreement. (Doc. No. 112 at 22). While the Court would be loathe to allow Faber to testify as an expert in contract interpretation, FOL describes a different purpose for Faber's testimony. FOL argues that Faber will assist the jury in understanding sponsors' interest, risks, the potential harm to a sponsor's brand a sponsored individual can cause, and the use of special contractual language to protect the sponsor's brand from harm.

Faber's experience in the areas that FOL claims his testimony will cover shows that he has adequate "knowledge, skill, expertise, training, or education" to qualify as an expert. Fed. R. Evid. 702. FOL will be allowed to call Faber but will be limited to questioning him in the following areas: (1) branding; (2) they types of interests sponsors aim to protect in sponsorship agreements; (3) the risks to a brand that generally are exposed in a sponsorship relationship; (4) the extent to which the actions of a sponsored individual may harm a sponsor's brand; and (5) the use of specialized language in a contract to protect the sponsor's brand from harm.

## III. Lost Profits

TG seeks lost profits for the 2006 season. Lost profits are only recoverable under the limited circumstances "when it is made to appear (1) that it is reasonably certain that such profits would have been realized except for the breach of the contract, (2) that such profits can be ascertained and measured with reasonable certainty, and (3) that such profits may be reasonably supposed to have been within the contemplation of the parties, when the contract was made, as the probable result of the breach." Keith v. Day, 343 S.E.2d 562, 568-69 (N.C. Ct. App. 1986) (internal quotation marks omitted). Damages for lost profits cannot be based upon "hypothetical or speculative forecasts of losses." Iron Steamer, Ltd. v. Trinity Restaurant, Inc., 431 S.E.2d 767, 770 (N.C. Ct. App. 1993) (citation omitted). However, while evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion, "absolute certainty is not required." Perfecting Service Co. v. Product Development & Sales Co., 131 S.E.2d 9, 22 (N.C. 1963); see also Keith, 343 S.E.2d at 569 ("The indefiniteness consequent upon this difficulty does not, however, by itself preclude relief. . . . What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages.") (citation

4

omitted).

TG offers evidence of lost profits in the form of an affidavit by Robby Gordon, as well as a "Pro Forma Profit & Loss" statement ("P&L statement") prepared by TG's comptroller Alison Poling, under the "supervision and direction" of Gordon. The affidavit generally states that it was Gordon's plan "from the beginning" that TG would be more than a single driver team and that TG would race in both the Cup and Busch Series "if possible." The affidavit states that the goal was to race in both the Busch Series and the Cup Series in 2006, and that Gordon shared these plans with FOL's Randy Koedyker. In the P&L statement, Gordon compares TG's actual financial performance in 2006 to what its financial performance would have been, based on projected revenue and expenses, if FOL had paid TG the $4 million in 2006.

This evidence is problematic on both substantive and procedural fronts. First, TG did not plead lost profits as damages, although it did attempt to include the claim via an amended complaint. The Court denied TG leave to file the amended complaint, and thus lost profits were not a part of the case until TG filed Gordon's affidavit and the P&L statement on August 28, 2008, in response to FOL's motion for summary judgment. Further, Gordon's evaluation of lost profits is technical in nature, and FOL correctly points out that it must meet the *Daubert* standards of reliability. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). TG did not designate Gordon as an expert in this area, nor did TG file an expert report by him.

The P&L statement cites only a single year with a single car team, and compares it to what might have happened if Gordon had been able to field a team in both the Busch Series and the Cup Series. There is no historical financial performance with which the Court can compare the estimate. Further, there is no evidence of Gordon's credentials in making financial projections. Finally, the

P&L statement was purportedly prepared by the company's comptroller, Alison Poling, of whom the Court knows nothing.

Based on TG's failure to plead lost profits, evidence of lost profits is improper from a procedural perspective. Further, lost profits are too speculative and not reasonably certain. Gordon's affidavit and the P&L statement fall far short of reasonable certainty as to both cause and measure. Gordon uses only 2006 data in comparing his projections. Further, he had no experience running teams in both the Busch Series and the Cup Series prior to 2006. Whether TG would have been profitable in 2006 but for FOL's alleged breach is speculative. Even if TG could show profitability but for FOL's breach, TG cannot prove a reasonably certain measure of damages, since there are countless variables at play, including uncertain income from race winnings and indeterminate expenses from failing to qualify in races and having to pay sponsors refunds.

Therefore, TG is barred both procedurally and substantively from claiming lost profits at trial.

## IV. Final Issues for Trial

The final general issues for trial are as follows:

1. Has Team Gordon proven by the greater weight of the evidence that Fruit of the Loom breached the Sponsorship Agreement when, in July 2005, it informed Team Gordon that it would not renew the agreement for the 2006 season? If yes, what damages, if any, resulted?

2. Which party has proven by the greater weight of the evidence that the other party breached the Sponsorship Agreement on or about September 18, 2005? What damages, if any, resulted?

## V. Conclusion

**IT IS, THEREFORE, ORDERED** that:

1. "Nature of NASCAR" evidence will be allowed as a general premise;

2. Newspaper articles, videos, and print-outs of online news stories will not be admitted to prove the nature of NASCAR;

3. Evidence of other sponsors' decisions whether to terminate drivers under similar circumstances will not be admitted;

4. Evidence of other drivers' controversial behavior will be admitted if in the proper form;

5. FOL's designated expert Jonathan Faber will be allowed to testify to information limited to the five categories set forth in this Order; and

6. TG may not assert a claim for lost profits at trial.

**SO ORDERED.**

Signed: January 29, 2010

Robert J. Conrad, Jr.
Chief United States District Judge